IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LEGACY COMMERCIAL FLOORING LTD.,

          **Plaintiff,**                       **Case No. 2:10-CV-486**

    v.                                   **JUDGE SARGUS**

                                        **MAGISTRATE JUDGE KEMP**

UNITED AMERICAN HEALTHCARE
CORPORATION, et al.,

          **Defendants.**

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendant United American

Healthcare Corporation's Motion to Dismiss for failure to state a claim. (Doc. 8.)  For the

reasons that follow, the motion is **GRANTED**.

**I. Background**

Plaintiff Legacy Flooring ("Legacy") brings this action against Defendants United

American Healthcare Corporation and United American Solutions (collectively "UAHC")

claiming a breach of the duty to negotiate in good faith and, in the alternative, promissory

estoppel. Legacy's claims arise from a contemplated asset purchase transaction that was

ultimately never consummated by the Parties.

In September 2009, the Parties executed a letter of intent, titled a "Non-binding

Indication of Interest," expressing their intention to enter into a transaction whereby Legacy

would sell its assets to UAHC. (*See* Compl. ¶ 5, Ex. 1 at 1.) The letter of intent begins with a

statement from UAHC stating that it is "very enthusiastic about this potential transaction" and

that it has "set forth the conditions pursuant to which UAHC is prepared to carry out definitive

due diligence of Legacy, with a view of subsequently consummating a transaction." (Compl. Ex.

1 at 1.) The letter then is divided into various sections outlining these conditions, including a

preconditions and approvals section, a disclaimer of liabilities section, and a confidentiality

section. (Compl. Ex. 1 at 1–3.) Within the preconditions and approvals section, UAHC states

that the "consummation of the proposed Transaction would be subject to and conditional upon,

among other things, the . . . [e]xecution of a mutually agreed Asset Purchase Agreement and

other documentation as appropriate." (Compl. Ex. 1 at 2.) The disclaimer of liabilities then

explains:

> Except to the extent provided in any Definitive Agreement entered into by the
> Parties, each party would be solely responsible for its own expenses, legal fees
> and consulting fees related to the negotiations described in this Indication,
> whether or not any of the transactions contemplated in the Indication are
> consummated.

(Compl. Ex. 1 at 3.) The confidentiality section indicates that the letter "is not intended to

constitute a binding contract" but instead it is "a statement of their understanding . . . to proceed

with the process as outlined." (Compl. Ex. 1 at 3.) UAHC ends the letter stating that "this

Indication is neither an agreement nor an agreement to enter into an agreement, and that any

transaction contemplated herein would be contingent upon a number of factors, including the

negotiation and execution of definitive transaction documents" and if Legacy is "in agreement

with the terms and conditions" of the letter it should sign and return the agreement. (Compl. Ex.

1 at 3–4.) After receiving the letter, Legacy signed and returned a copy the following day.

(Compl. Ex. 1 at 4.)

During the six months following the execution of the letter of intent, the Parties

exchanged multiple drafts of an asset purchase agreement ("APA"), with a final version

exchanged on or about February 5, 2010. (Compl. ¶¶ 9–10.) According to Legacy, UAHC

represented to Legacy that the parties would execute the draft APA on or about February 16,

2010. (Compl. ¶ 14.) However, on February 10, 2010, UAHC notified Legacy that it was no longer interested in purchasing Legacy's assets. (Compl. ¶ 15.) Legacy claims that it expended over $350,000 on transactional expenses during the course of negotiations and in preparation for its sale to UAHC at UAHC's request and in justifiable reliance on UAHC's representations that it intended to purchase Legacy's assets. (Compl. ¶ 16.) UAHC now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II. Standard of Review**

A Rule 12(b)(6) motion requires dismissal if the complaint fails to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted). Finally, "[i]n determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted)).

### III. Discussion

#### A. Good Faith Claim

UAHC asserts that Legacy's claim for a breach of the duty to negotiate in good faith must be dismissed on two alternative grounds for failing to state a claim. First, it contends that the letter of intent is not a binding agreement and the claim must be dismissed because no duty of good faith performance—here, an alleged duty to negotiate the asset purchase in good faith— could arise absent a binding agreement. Second, according to UAHC, even if the letter of intent were deemed to be a binding agreement, any implied duty of good faith performance was overridden by the express terms of the letter of intent. Legacy, on the other hand, contends that a binding agreement consisting of the letter of intent and the draft APA was formed and breached when the transaction was not consummated. Legacy, however, does not deny that the APA was never executed. The Court agrees with UAHC that Legacy's first claim should be dismissed.

The Parties do not dispute that Michigan law governs Legacy's claims. "A claim for the breach of the covenant of good faith and fair dealing independent of a breach of contract claim is untenable and not recognized by Michigan courts." *Victory Lane Quick Oil Change, Inc. v. Hoss*, 659 F. Supp. 2d 829, 839 (E.D. Mich. 2009) (citations omitted). Thus, UAHC is correct in asserting that, if the letter of intent is nonbinding, which on its face it purports to be, no duty to negotiate the asset purchase in good faith attached to UAHC.

Additionally, if the letter of intent is deemed to be binding, under Michigan law, a duty to act in good faith cannot override express contractual terms. *Gen. Aviation Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir.1990). Instead, the duty arises only where a party leaves its contractual performance up to its own discretion. *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) (citing *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 876 (5th Cir. 1989) (applying Michigan law)). Discretion in a contract "arises when the

4

parties have agreed to defer decision on a particular term of the contract" or when there is a 'lack of clarity' or an 'omission in the express contract.'" *Id.* (quoting *Hubbard*, 873 F.2d at 877 n.2). Here, however, the letter of intent, part of what is considered by Legacy to be the binding contract, is clear and its terms are nondiscretionary. In this regard, the letter unambiguously states that the parties are not obligated to consummate the asset purchase. Even if a duty to negotiate the asset purchase in good faith were deemed to have arisen from the letter of intent, the letter specifically states that neither party is liable to the other for costs incurred if the negotiations were terminated. (Compl. Ex. 1 at 3.) These are precisely the costs that Legacy now attempts to recover through this action. This Court cannot override such express, nondiscretionary terms by imposing the costs on UAHC that Legacy incurred during the Parties' negotiations.

Despite its contention that the letter of intent and the draft APA together form an agreement for the purchase of Legacy's assets, Legacy has failed to explain how this could be the case given that an APA was never executed by the parties. The letter of intent expressly provides that "[t]he consummation of the proposed Transaction would be subject to and conditional upon . . . [e]*xecution* of a mutually agreed Asset Purchase Agreement." (Compl. Ex. 1 at 2 (emphasis supplied).) Nor has Legacy offered any explanation as to why the plain and unambiguous terms of the letter of intent, terms it does not dispute it agreed to, should be disregarded. Accordingly, even if the Court accepts as true the factual allegations of Legacy's complaint, Legacy's contractual claim is simply not plausible given the terms of the letter of intent.

### B. Promissory Estoppel Claim

A plaintiff claiming promissory estoppel under Michigan law must allege: "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and

5

substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552 (Mich. Ct. App. 1999). "The promise must be definite and clear, and the reliance on it must be reasonable." *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 761 N.W.2d 151, 166 (Mich. Ct. App. 2008) (citation omitted).

Legacy's complaint merely alleges that it "justifiably relied to its detriment on various promises that UAHC made to it, including a promise that UAHC would purchase Legacy's assets," (Compl. ¶ 24.), and "[i]n justifiable reliance on UAHC's promises" it expended money on transactional expenses. (Compl. ¶ 26.) These statements do not indicate that any definite and clear promise was made. Legacy does not state when such promises were made in relation to when the transactional costs were incurred, nor does it allege who made such promises or how such promises were made. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Therefore, Legacy has failed to allege sufficient factual matter to "state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Furthermore, Michigan courts have "held that no action for promissory estoppel may lie when an oral promise expressly contradicts the language of a binding contract." *Zaremba Equip.*, 761 N.W.2d at 166 (citing *Novak*, 599 N.W.2d at 552). As previously explained *supra*, the letter of intent in this case clearly states that the "consummation of the proposed Transaction would be subject to and conditional upon, among other things, the . . . [e]xecution of a mutually agreed Asset Purchase Agreement and other documentation as appropriate." (Compl. Ex. 1 at 2.)

6

Thus, if the letter of intent is indeed a binding contract, the promissory estoppel claim again fails because any such definitive promise that UAHC would purchase Legacy's assets, is contradicted by the express terms of the letter of intent, which also preclude recovery of the very damages Legacy alleges in its claim.

However, even if the letter of intent does not constitute a binding contractual agreement, this Court still must dismiss Legacy's promissory estoppel claim. As the Court of Appeals of Michigan stated in *Bidgroup, LLC v. GKN Sinter Metals, Inc.*, No. 271288, 2007 WL 172317 (Mich. Ct. App. Jan. 23, 2007), the letter of intent still "provides context for the parties' negotiations" and thus "any alleged promise relating to the proposed acquisition was not clear and definite but was qualified and conditioned and not a basis for a promissory estoppel claim." *Id.* at *3. In this case, any promise that UAHC would purchase Legacy's assets was conditioned on the terms of the letter of intent, which again made any transaction "contingent upon . . . the negotiation and execution of definitive transaction documents" and both Parties agree that they never executed such documents. (Compl. Ex. 1 at 3.) Finally, the letter of intent unambiguously evidences the Parties' intent to preclude recovery of the costs Legacy seeks to recover through this action.

## IV. Conclusion

For the reasons discussed above, the Court hereby **GRANTS** Defendants' Motion to Dismiss (Doc. 8). The Clerk is directed to enter judgment in favor of Defendants and close this matter.

IT IS SO ORDERED.


_3 - 28 - 2011_
_____
**DATED**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

8